UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **EXPRESS SCRIPTS, INC.,** | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Cause No.4:07-CV-00966ERW |
| **BUILDING SERVICES LOCAL 32 BJ HEALTH AND PENSION FUNDS** | ) ) ) ) |
| Defendants. | ) |

**AGREED ORDER ESTABLISHING PROTOCOL FOR PRODUCTION OF ELECTRONIC DATA**

This matter having been brought before the Court by the parties in the above-captioned litigation and the parties through counsel having agreed to the form and entry of this Order; because during discovery in this matter certain issues may arise with the production and handling of electronic documents and data and for other good cause shown,

IT IS this 15th day of November, 2007, ORDERED AS FOLLOWS:

**A. Scope**

1. Except as specifically limited herein, the procedures and protocols outlined herein govern the production of Discoverable Electronic Information (as defined below) by a party during the pendency of this litigation.

2. As used in this order, the term Discoverable Electronic Information means discoverable documents and data existing in electronic form in the broadest sense consistent with Fed.R.Civ.P. 34(a), including e-mail, calendars, electronic peer-to-peer messages, word processing documents, spreadsheets, electronic slide presentations, databases, and other electronic data items containing information relevant to facts and claims at issue in the litigation.

3. As used in this order, the term "parties" means each party to this litigation, namely, plaintiff, Express Scripts, Inc., and defendant, Building Service 32 BJ Health Fund.

### B. Identification of Responsive Data

1. Discoverable Electronic Information which is neither privileged nor otherwise protected shall be timely reviewed and produced electronically in accordance with the guidelines herein.

2. The parties shall meet and confer to establish a timetable for the production of such data. Further, prior to the actual production of any data, the parties shall meet and confer to confirm that the data is responsive to the discovery requests and appropriate for production in the format in which the production is to be made. This meet and confer shall include a discussion of whether search terms will be used to identify responsive electronic data and which locations, systems, and/or custodians shall be subject to production. If the parties agree that using search terms is an appropriate method for retrieval of responsive electronic data, the parties shall meet and confer as to which search terms will be used and to determine the appropriate protocol for such searches. The meet and confer shall also include a discussion as to whether the scope of the parties' preservation obligations can be limited.

3. In the event that the parties are unable to agree on a reasonable timetable for production or other issues, the Court shall resolve such disputes.

4. The parties shall meet and confer in good faith to identify to what extent back up tapes that are not reasonably accessible without undue burden or cost within the meaning of Rule 26(b), F.R.Civ.P., or other archived data that are not reasonably accessible without undue burden or cost within the meaning of Rule 26(b), F.R.Civ.P., may be responsive to any requests. To the extent that a complete response to a request for production of Discoverable Electronic

Information made by a party to this action would entail restoration of back-up tapes that are not reasonably accessible or other archived data which are not reasonably accessible, prior to restoration the producing party shall provide the requesting party with a description of data that is readily available from on-line systems; thereafter, the parties shall confer in good faith to determine whether the production request can be satisfied without the necessity of restoring data from back-up tapes or other archived data or otherwise be limited in scope or whether the cost of restoring such data should be paid all or in part by the requesting party. In the event back-up tapes and/or other archived data are selected for restoration, the parties shall endeavor to avoid the unnecessary restoration of duplicate or non-responsive data. Further, as a part of the meet and confer process contemplated herein, the parties shall attempt in good faith to identify what back-up and/or archival media should be retained by a party during the pendency of this action to minimize the unnecessary preservation of data. If the parties cannot agree with respect to the restoration of back-up tapes or other archived media or other data sources which are not reasonably accessible, the Court shall resolve such disputes.

5.  Metadata must be produced if it is responsive to a request. The parties shall meet and confer as to whether metadata on a particular type of document is responsive and shall endeavor to agree on the metadata fields associated with such document type.

### C. General Instructions

1.  **Document Production Format.** The following provisions shall generally govern the production format and procedure for Discoverable Electronic Information other than data extracted from mainframe or other similar computers.

    a. Format. All Discoverable Electronic Information, other than the data extracted from mainframe or other similar computers, shall be saved electronically in a single-page

Group 4 TIFF image and associated searchable text that reflects how the source document would have appeared if printed out to a printer attached to a computer viewing the file.

b. Appearance. Subject to appropriate redaction, each document's electronic image shall convey the same information and image as the original document. Documents that present imaging or formatting problems shall be promptly identified; the parties shall meet and confer in an attempt to resolve the problems.

c. Load files. The producing party shall provide a load file to accompany the images, which load file shall facilitate the use of the produced images by a document management or litigation support system. The load file shall contain the file name, including the path (directory/subdirectory) where the file is located. The parties shall meet and confer with respect to the format of the load file.

d. Document Unitization. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as it existed in the original file or computer of the producing party or shall be documented in a load file or otherwise electronically tracked. In addition, if a document contains embedded documents, the embedded document shall be produced along with the parent document in a manner that clearly identifies it as the embedded document.

e. Color. If an original document contains color, the producing party shall honor reasonable requests for either the production of an original document for inspection and copying or production of a color image of the document.

f. "Bates Numbering." Each page of a produced document produced in TIFF format shall have a legible, unique page identifier (Bates Number) electronically "burned" onto the image at a location that does not obliterate, conceal or interfere with any information from

the source document. There shall be no other legend or stamp placed on the document image unless a document qualifies for confidential treatment pursuant to the terms of the Protective Order or has been redacted in accordance with applicable law or Court order. In the case of confidential materials or materials redacted in accordance with applicable law or Court order, a designation may be "burned" onto the document's image at a location that does not obliterate or obscure any information from the source document.

       g. File Naming Conventions. Each TIFF image file shall be named with the Bates Number corresponding to the number assigned to the document page contained in that image.

       h. Production Media. The producing party shall produce documents on CD-ROM, DVD, external hard drive (with standard PC compatible interface), or such other readily accessible computer or electronic media as the parties may hereafter agree upon (the "Production Media"). Each piece of Production Media shall be assigned a production number or other unique identifying label corresponding to the date of the production of documents on the Production Media (e.g., "Plaintiff Production Sept. 15 2003") as well as the sequence of the material in that production wave (e.g. "-00001", "-00002"). For example, if the production comprises document images on three DVDs, the producing party may label each DVD in the following manner "Plaintiff Production Sept. 15 2005-00001", Plaintiff Production Sept. 15 2005-00002", Plaintiff Production Sept. 15 2005-0003". Additional information that shall be identified on the physical Production Media includes: (1) text referencing that it was produced in Express Scripts, Inc. v. Building Service 32 BJ Health and Pension Fund, Cause No. 4:07-CV-00966ERW in the Eastern District of Missouri and (2) the Bates Number range of the materials contained on the Production Media. Further, any replacement Production Media shall cross-reference the original Production

Media and clearly identify that it is a replacement and cross-reference the Bates number range that is being replaced.

      i. **Source Information.** Electronic records and computerized information must be produced with sufficient information to permit identification of the production source or custodian, to the extent such information is available to the producing party. This source information shall include, if applicable, the name of the entity that is producing the information, along with information such as city, site, and department sufficient to uniquely identify the producing custodian.

      j. **Write Protection and Preservation.** All computer media that is capable of write protection should be write-protected before production.

  2.  **Native File Format Production.** Documents may be produced, in the first instance, in TIFF format. If documents are initially produced in TIFF format, documents need only be produced in native format upon reasonable request of the receiving party and agreement of the producing party, which agreement shall not be unreasonably withheld. The following subsections apply to any documents produced in their native file format.

      a. **Original Documents.** The producing party shall retain the original source documents in their native format. Such documents shall be maintained in a manner to preserve the meta-data associated with these electronic materials in the event review of such meta-data becomes necessary. Subject to preservation of appropriate privileges and other protections of information from production in accordance with applicable law, the producing party shall, upon reasonable request, make originals of any produced document available for inspection by the requesting party in the form in which such documents are kept in the ordinary course of business.

b. Native files required or agreed to be produced hereunder shall be provided on read-only media and shall be assigned a Bates Number corresponding to the Bates Number of the first page of the previously produced Tiff file, with an appropriate suffix. If a document was not previously produced in Tiff format, the file shall be given a unique Bates Number that will identify the file and include the appropriate suffix for the file. In order to verify the integrity of a native file, the producing party may calculate a "hash value" for such file using the MD5 protocol. Such "hash value" shall be supplied to the receiving party along with the document. If a native file produced under this protocol is used at trial or deposition, the party using such file shall be prepared to demonstrate that the "hash value" of such file has not changed and that the file being used at such trial or deposition is identical to the original produced file.

c. Decryption and Passwords. To the extent that decryption or access passwords are necessary to unlock any electronic document in its native form, including without limitation electronic mail passwords and file decryption passwords, the parties shall meet and confer to develop appropriate steps to allow access to the data without compromising confidentiality, security, or proprietary interests.

d. Emails and Calendars. To the extent that electronic mail (email) and calendar software containing Discoverable Electronic Information is produced, it shall be produced together with any agreed metadata associated with each such email and calendar, in electronic form, in an accessible standard format, and on a standard media, in each case, as agreed to among the parties.

e. Other "Office" documents. To the extent that word processing files, computer presentations (e.g. PowerPoint slides), stand alone spreadsheets (e.g. Excel) containing Discoverable Electronic Information are produced, they shall be produced together with the

agreed meta-data associated with each such document, in electronic form, in an accessible standard format and on a standard media, in each case, as agreed to among the parties.

f. Databases. To the extent that databases containing Discoverable Electronic Information are produced, they shall be produced together with any agreed metadata associated with each such database, in a manner agreed to among the parties, either as used and maintained in the ordinary course of business (including any forms and variations thereof and a description of the database schema and any explanation of any codes or abbreviations) or in such other form as may be agreed to among the parties, including but not limited to in the form of reports generated from such database.

g. Redaction. For any file produced in native format that is entitled to be redacted, whether for privilege or other non-producible information, the parties shall meet and confer with respect to suitable techniques and methods of redaction to preserve the integrity of the data while protecting information subject to privilege or other protections. If a file cannot be redacted prior to production, the parties shall agree to take such other steps as may be necessary to protect the redactable information and prevent unauthorized use or disclosure.

h. Other. To the extent any other documents containing Discoverable Electronic Information are identified, the parties shall meet and confer to determine the manner of production of such documents and any agreed meta-data associated therewith.

i. To the extent Discoverable Electronic Information produced pursuant to this Order cannot be rendered, viewed, or otherwise converted into a useable format for production without the use of proprietary third party software, the producing party shall assist the receiving party in obtaining authorization by any third person or entity holding any patents or exclusive license to such software. The party requesting the software shall be responsible for compliance

with any applicable licensing or confidentiality requirements and for payment of any additional license fees to such third parties or entities that result from their use of the software. The parties shall cooperate and seek to attempt to minimize any expense or burden associated with production of data that requires third party software to access and further seek to attempt to minimize any expenses and burden that may be incurred in obtaining software from any third party. The parties shall meet and confer to address such issues as may arise with respect to obtaining access to any such software and operating manuals which are the property of a third party.

k. File Naming Convention. The file naming protocol for native files shall be along the following lines to include a Bates Number as part of the file name and preserving the original file name with respect to native files as well as the operative file extension:

<u>Bates Number.original file name.original extension</u>

For example: if the party identifier is XYZ, the Bates Number of the particular document is 12345, and the original file name was "excelfile," the file would be named as follows: XYZ.12345.excelfile.xls.

3. **Data Production Format.** The following provisions shall generally govern the production format and procedure for Discoverable Electronic Information extracted from mainframe or other similar computers.

a. Production Information. Electronic records and computerized information for mainframe and other similar computers must be produced in an intelligible format or together with a technical description of the system from which they were derived sufficient to permit rendering the records and information intelligible.

      b.      **Continued Assistance.** Following the production of electronic data, the producing party shall cooperate and provide reasonable assistance to the receiving party in connection with the installation and use of such data and software.

      c.      **Mainframe Data Production Format.** To the extent that Discoverable Electronic Information is produced from a database residing on a mainframe or other similar computer, it shall be provided in such machine readable format and on such media as the parties may agree. To the extent the parties do not agree otherwise, the data shall be provided in ASCII format. If the receiving party then exports the ASCII file into another application, e.g., Access or Excel, that party shall provide a copy of the new file to the other party so that the parties may verify the integrity of the file as contemplated in Paragraph C.2.b., above. The producing party will provide information regarding any data format for the production and information regarding encoded data and the meaning of any encoded data in the production. Media labeling conventions described above shall be followed to the extent feasible.

    4.    **Withholding Production.** A party withholding documents based on one or more claims of privilege shall supply a list of the documents so withheld with the following information:

        i)      The identity and job title of each document's author, writer, sender;

        ii)     The identity and job title of each document's recipient, addressee, or person for whom it was intended;

        iii)    The date of creation or transmittal indicated on each document, or an estimate of that date, indicated as such, if no date appears on the document or in meta-data information;

        iv)    The general subject matter as described on each document, or, if no such description appears, then some other description sufficient to identify the document; and

        v)     The basis for any claims(s) of privilege (e.g., attorney-client privilege)

vi) In the case of where a document or file contains a "string" of e-mails, each "string" must be identified as described in subsections i – v.

5. **Inadvertent Disclosures.** Should any party not intending to make a disclosure inadvertently produce Discoverable Electronic Information subject to a claim of privilege, the producing party shall so notify in writing within a reasonable time after discovering the inadvertent production, and the receiving party shall promptly return or destroy the specified information and all copies. Thereafter, the parties claiming privilege must comply with the provisions of this Order with respect to furnishing information supporting its claim of privilege and must preserve the document.

6. **Redaction for Privilege.** Should the producing party seek to redact any document based on one or more claims of privilege (which does not include protected health information subject to the Health Insurance Accountability and Portability Act), the producing party shall supply a list of the documents for any such claim(s) of privilege, indicating the information required in Paragraph C.4 above for the redacted portion of the document.

During the pendency of the litigation, an electronic copy of the original unredacted data shall be securely preserved in such manner so as to preserve without modification, alteration, or addition the content of such data, including any meta-data associated therewith.

7. **Shipping.** All computer media must be properly packaged to ensure safe shipping and handling. If any piece of media produced is known to have any physical defect, electronic defect, or damaged data, or is infected with any virus or other harmful software of any kind, it should be clearly labeled so that appropriate care can be taken during its examination.

### D. Further Instructions

1. **Redaction Software.** Upon request and subject to any proprietary restrictions imposed by third party licensors on the disclosure of information, the producing party shall

describe the procedures and software used to redact any documents or data existing in electronic form such that the receiving party can identify how information was redacted and can obtain and or evaluate the software.

3. **English Language.** To the extent any document or data exists in more than one language, the data or documents to be produced hereunder shall be produced in English, if available.

4. **Authentication.** The parties shall meet and confer to develop appropriate provisions for authenticating Discoverable Electronic Information produced hereunder, and for using such at deposition or in any other evidentiary manner, subject to the provisions of the Protective Order entered in this case, including but not limited to procedures for the identification of production numbers associated with data produced in electronic form and reproduced for use at deposition or trial.

5. **Cooperation.** The parties shall, as necessary, meet and confer to exchange information regarding issues associated with any electronic production of Discoverable Electronic Information, including but not limited to identification of redaction software and procedures, identification of software used in creation of native files, database field definitions and structure or document delivery mechanisms.

6. **Variance.** Any practice or procedure set forth herein may be varied by agreement of the parties, and confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of Discoverable Electronic Information.

7. **Duplicate Production Not Required.** A party producing Discoverable Electronic Information in electronic form need not produce the same document in paper format.

### E. Cost Containment

The procedures and protocols herein pertaining to production of Discoverable Electronic Information are subject to the development of reasonable and appropriate strategies to minimize the cost and burden that may be associated with production of electronic data and to the development of reasonable and appropriate cost allocation agreements. Any such cost allocation agreements shall be tailored to give the parties incentives to use cost-effective means of obtaining information and disincentive to engage in wasteful and costly discovery activity.

### F. Timing and Sequencing of Electronic Discovery

Any party under an obligation to produce Discoverable Electronic Information shall commence the production of such Discoverable Electronic Information and proceed with the production of the electronic information in a timely manner consistent with time considerations to be developed by the parties. The parties shall use their best efforts to sequence the production of Discoverable Electronic Information consistent with the requesting parties requests. The parties shall meet and confer to arrange for an orderly production of such Discoverable Electronic Information.

SO ORDERED this 15th day of November, 200_

_____
Hon. E. Richard Webber

**APPROVED AS TO FORM AND ENTRY:**

Dated: November 8, 2007

HUSCH & EPPENBERGER, LLC


By: /s/ Michael P. Nolan
    Thomas M. Dee, #2956
    tom.dee@husch.com
    Michael P. Nolan, #118561
    michael.nolan@husch.com
    190 Carondelet Plaza, Suite 600
    St. Louis, MO 63104
    Phone: (314) 480-1500
    Fax: (314) 480-1505

*Attorneys for Express Scripts, Inc.*

GREENSFELDER, HEMKER & GALE, P.C.


By: /s/ Timothy M. Huskey
    Edward M. Goldenhersh, #3234
    emg@greensfelder.com
    Timothy M. Huskey, #109662
    tmh@greensfelder.com
    10 S. Broadway, Suite 2000
    St. Louis, MO 63102
    Telephone: (314) 241-9090
    Facsimile: (314) 345-5488

*Attorneys for Building Services Local
32 BJ Health and Pension Funds*